# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CIERRA MERRIWEATHER**, a minor, by her parent and natural guardian, Melynee Walker, **and MELYNEE WALKER** : : : : **Plaintiffs,** : : v. : : **CITY OF PHILADELPHIA;** : **DEPARTMENT OF HUMAN SERVICES** : **OF THE CITY OF PHILADELPHIA;** : **PHILADELPHIA COUNTY CHILDREN** : **AND YOUTH AGENCY; ROBERT** : **WHITE; GEORGE KUYKENDALL; B.** : **BRUCE; CHRISTOPHER LEWIS;** : **MUHAMMAD IKHLAS; JOHN DOES** : **NOS. 1-5 OF CITY OF PHILADELPHIA;** : **JOHN DOES NOS. 1-5 OF** : **PHILADELPHIA COUNTY CHILDREN** : **AND YOUTH AGENCY; JOHN DOES** : **NOS. 1-5 OF DEPARTMENT OF** : **HUMAN SERVICES OF THE CITY OF** : **PHILADELPHIA; DEPARTMENT OF** : **PUBLIC WELFARE OF THE** : **COMMONWEALTH OF** : **PENNSYLVANIA; JOHN DOES NOS. 1-5** : **OF DEPARTMENT OF PUBLIC** : **WELFARE OF THE** : **COMMONWEALTH OF** : **PENNSYLVANIA; CYNTHIA CASEY;** : **CYNTHIA CASEY**, as legal guardian of Deandre Evans**; DEANDRE CASEY**, as legal guardian and/or parent of Deandre Evans**; and JANE DOE MOTHER**, as legal guardian and/or parent of Deandre Evans**;** **ROMANUS EZE** : : **Defendants.** : | CIVIL ACTION NO. 07-1005 |

**ORDER AND MEMORANDUM**

**O R D E R**

**AND NOW**, this 17th day of May, 2007, upon consideration of the Department of Public Welfare's Motion to Dismiss (Document No. 4, filed April 17, 2007); Plaintiffs' Response to the Motion to Dismiss of Defendant, Department of Public Welfare (Document No. 8, filed May 1, 2007); and the Reply Memorandum of Law to Plaintiff's Response to the Motion to Dismiss of the Department of Public Welfare's [sic] (Document No. 9, filed May 2, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the Department of Public Welfare's Motion to Dismiss is **GRANTED** under Federal Rule of Civil Procedure 12(b)(1). Plaintiff's Complaint against defendant the Department of Public Welfare is **DISMISSED FOR LACK OF JURISDICTION**.[1]

**M E M O R A N D U M**

**I.   INTRODUCTION**

This is a civil rights lawsuit brought by plaintiff Cierra Merriweather and her mother, plaintiff Melynee Walker. Plaintiffs assert that Merriweather, a minor, was raped by another minor while in foster care.

In their Complaint, plaintiffs assert claims against eighteen defendants. Of these, the sole moving defendant is the Department of Public Welfare of the Commonwealth of Pennsylvania ("DPW"). As to DPW, plaintiffs assert civil rights violations under 42 U.S.C. § 1983 and pendant state law claims of "negligent, reckless, intentional and outrageous conduct," fraud, and

---

[1] Because the Department of Public Welfare's Motion to Dismiss does not address plaintiffs' claims against defendants John Does Nos. 1-5 of the Department of Public Welfare, the Court does not address those claims in this Order.

breach of contract.  Compl. ¶¶ 23, 101, 107.

Presently before the Court is defendant DPW's Motion to Dismiss under the Eleventh Amendment and state sovereign immunity law.  For the reasons set forth below, DPW's Motion to Dismiss is granted for lack of subject matter jurisdiction under the Eleventh Amendment pursuant to Federal Rule of Civil Procedure 12(b)(1).  Because the Motion to Dismiss does not address plaintiffs' claims against defendants John Does Nos. 1-5 of the Department of Public Welfare, the Court does not rule on those claims in this opinion.

## II.     BACKGROUND

The following facts are taken from plaintiffs' Complaint and are construed in the light most favorable to plaintiffs.

### A.     Placement in Foster Care

On or about March 15, 2005, Walker "noticed several welts and bruises" on Merriweather, then five years old.  Id. ¶ 27.  Walker voluntarily brought Merriweather to the nearest Philadelphia Police Department station to report the injuries.  Id.  Thereafter, Walker and a police officer took Merriweather to Saint Christopher's Hospital for Children (the "Hospital"). Id. ¶ 28.

Either the Philadelphia Police Department or the Hospital reported Merriweather's injuries to defendants the City of Philadelphia ("the City"), the Department of Health and Human Services ("DHS"), the Philadelphia County Children and Youth Agency ("PCCYA") and/or DPW.  Id. ¶ 29.  The City, DHS, PCCYA and/or DPW ordered that Merriweather spend the night in the Hospital while her injuries were investigated.  Id. ¶ 31.  Merriweather did not accuse Walker of inflicting her injuries.  Id. ¶ 30.

3

The next day, March 16, 2005, defendant George Kuykendall, of the City, DHS, PCCYA and/or DPW, visited Walker's home.  Id. ¶ 32.  Kuykendall informed Walker that Merriweather needed to be removed from Walker's custody.  Id. ¶ 33.  "Under duress" from Kuykendall and in "fear of losing her daughter," Walker voluntarily agreed to place Merriweather in foster care and signed a Voluntary Placement Agreement.  Id. ¶¶ 33-35, Ex. A.  Allegedly, Kuykendall "threatened" Walker that if she did not sign the Voluntary Placement Agreement, "a restraining order, or the like, would be obtained preventing Ms. Walker from having any contact whatsoever with" Merriweather.  Id. ¶ 34.

Thereafter, Kuykendall "pressed" Walker to provide foster care placement options for Merriweather.  Id. ¶ 36.  Walker "contacted several relatives who were unable to provide housing and care for [Merriweather] due to employment obligations."  Id.  When Walker explained this to Kuykendall, Kuykendall "threatened that if Ms. Walker could not find a placement, [Merriweather] would be placed in foster care with strangers."  Id.

During the conversation between Walker and Kuykendall, defendant Cynthia Casey, Merriweather's half-brother's grandmother, telephoned Walker's home.  Id. ¶ 37.  Kuykendall "took the telephone from Ms. Walker and asked Ms. Casey if she could provide housing and care for [Merriweather]."  Id.  Casey agreed to provide her home as a foster care placement for Merriweather.  Id.  However, Walker "expressed her concern" to Kuykendall about placing Merriweather in Casey's care.  Id. ¶ 38.

Kuykendall informed Walker that he would perform a background check on Casey.  Id. ¶ 39.  Kuykendall made a telephone call using his cellular telephone.  Id.  After making this call, Kuykendall informed Walker that Casey's background was "satisfactory."  Id.  Kuykendall's

4

entire visit to Walker's home lasted approximately thirty minutes.  Id. ¶ 40.

That same day, March 16, 2005, Merriweather was placed in foster care in Casey's home. Id. ¶ 41.  Also on or about that day, "investigation by the City, DHS, PCCYA and/or DPW revealed that [Merriweather]'s injuries were inflicted by [her] half-sister."  Id. ¶ 44. Merriweather's half-sister was removed from the home and placed in a psychiatric treatment center.  Id. ¶¶ 44-45.  However, the City, DHS, PCCYA and/or DPW did not return Merriweather to Walker "even though [Merriweather]'s home with her mother was no longer dangerous."  Id. ¶ 46.[2]  The City, DHS, PCCYA and/or DPW "unreasonably classify" Walker as a child abuser, despite the determination that Merriweather's half-sister inflicted Merriweather's injuries.  Id. ¶ 47.

**B.      Sexual Assault in Foster Care**

On or before April 5, 2005, shortly after her placement in foster care, Merriweather was raped by another minor, age eleven.  Id. ¶ 48.  Both children were allegedly "in the custody, control, possession and/or supervision of Defendants."  Id.  Casey or another occupant of her home paced a maxi-pad in Merriweather's underpants to absorb bleeding, but did not report the rape to the authorities or to Walker.  Id.  Walker learned of the incident in "a panicked telephone conversation" with Merriweather.  Id.  Merriweather was immediately taken to the hospital for treatment.  Id.

**III.    STANDARD OF REVIEW**

A motion to dismiss pursuant to the Eleventh Amendment is properly brought under

---

[2] Plaintiffs imply but do not state directly that Merriweather's half-sister resided with Merriweather and Walker at the time the injuries were inflicted.  Compl. ¶¶ 44-46.

5

Federal Rule of Civil Procedure 12(b)(1).  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996).  Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter . . ."  Fed. R. Civ. P. 12(b)(1).  Plaintiff bears the burden of showing that the case is properly before the Court at all stages of the litigation.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

"In evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts."  McCurdy v. Esmonde, 2003 WL 223412, *4 (E.D. Pa. Jan. 30, 2003).  "A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations."  Id. (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1990)).  In contrast, an "in fact" challenge under Rule 12(b)(1) disputes "the existence of certain jurisdictional facts alleged by the plaintiffs."  Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000).

Defendant's Motion to Dismiss is based upon Eleventh Amendment sovereign immunity and is therefore a "facial" challenge.  See, e.g., Scott v. Com. Dept. of Public Welfare, 2003 WL 22133799, *2 (E.D. Pa. Aug. 28, 2003); Nelson v. Com. of Pa. Dept. of Public Welfare, 244 F. Supp. 2d 382, 386 (E.D. Pa. 2002).  Accordingly, this Court "must accept the complaint's allegations as true" and draw all reasonable inferences in favor of plaintiffs.  Scott, 2003 WL 22133799 at *2 (quoting Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002)); see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

**IV.    DISCUSSION: PLAINTIFFS' CLAIMS AGAINST DPW ARE BARRED BY THE ELEVENTH AMENDMENT**

**A.    Legal Standard: The Eleventh Amendment**

"The Eleventh Amendment renders the States immune from 'any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" Tennessee v. Lane, 541 U.S. 509, 517 (2004).  Although the Eleventh Amendment expressly refers to suits by citizens of "another State," the Supreme Court has repeatedly held that this immunity "applies to unconsented suits brought by a State's own citizens." Id.

Moreover, "[a]lthough the language of the Eleventh Amendment refers only to 'States,' the Supreme Court has held that the immunity extends to entities that are considered arms of the state." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 545 (3d Cir. 2007).  To determine whether a state entity is an "arm of the state," courts in this Circuit employ a three-part test: "(1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has." Id. at 546 (citing Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc)).  In short, a state entity is considered an "arm of the state" where judgment against the entity "'would have essentially the same practical consequences as a judgment against the State itself.'" Id. at 545-46 (quoting Fitchik, 873 F.2d at 659)).

There are two general exceptions to the Eleventh Amendment's grant of sovereign immunity to states and state agencies.  See Alden v. Maine, 527 U.S. 706, 755 (1999); M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark, 344 F.3d 335, 345 (3d Cir. 2003).

First, Congress may abrogate Eleventh Amendment immunity if it has "unequivocally expresse[d] its intent to" do so and acted "pursuant to a valid exercise of power." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)); see also Nevada Dept. of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). Second, states may waive their immunity and consent to be sued. Alden, 527 U.S. at 755.[3]

**B.      Plaintiffs' Claims Against DPW Are Barred by the Eleventh Amendment**

Courts in this Circuit have repeatedly held that defendant DPW is an "arm of the state" for the purposes of the Eleventh Amendment. See Eaddy v. Pa. Dept. of Pub. Welfare Berks County Assistance Office, 2005 WL 1324881, *2 (E.D. Pa. Jun. 2, 2005); Smith v. Phila. Dep't of Human Serv., 2005 WL 525403, *3 (E.D. Pa. Mar. 3, 2005); Jones v. Pa. Dept. of Pub. Welfare, 2004 WL 1175808, *5-6 (E.D. Pa. May 27, 2004); Scott, 2003 WL 22133799 at *3; Nelson, 244 F. Supp. 2d at 390. See also 71 P.S. § 61 (establishing DPW as an administrative department of the Commonwealth of Pennsylvania). Accordingly, DPW is entitled to Eleventh Amendment sovereign immunity unless one of the relevant exceptions applies.

The Court concludes that neither of the relevant exceptions to sovereign immunity is applicable to this case. Specifically, there has been no abrogation or waiver of sovereign immunity. The Court addresses each of these exceptions in turn.

First, abrogation of sovereign immunity is squarely foreclosed in this case by Supreme Court precedent. As to plaintiffs' federal claims, the Supreme Court has held that Congress did

---

[3] In addition, the Eleventh Amendment does not bar certain suits "against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S., 344 F.3d at 345; Alden 527 U.S. at 756-57. This exception is not at issue in the instant Motion to Dismiss.

not abrogate Eleventh Amendment sovereign immunity in enacting 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).  As to plaintiffs' state law claims, the Supreme Court has held that Congress did not abrogate Eleventh Amendment immunity in enacting the supplemental jurisdiction statute, 42 U.S.C. § 1367(a).  Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 541-42 (2002) (holding that "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants"); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120 (1984).

Second, waiver of sovereign immunity is foreclosed by Pennsylvania state law.  Under 1 Pa.C.S.A. § 2310, the Commonwealth of Pennsylvania has explicitly retained its sovereign immunity from suit.  1 Pa.C.S.A. § 2310;[4] see also 42 Pa.C.S.A. § 8521.[5]  Although there are several narrow exceptions to this general rule, none of the exceptions applies to plaintiffs' claims against DPW.  See 42 Pa.C.S.A. § 8522; see also Mullin v. Com., Dept. of Transp., 582 Pa. 127, 137 (Pa. 2005) (holding that the "exceptions to sovereign immunity [in § 8522(b)] are to be

---

[4] 1 Pa.C.S.A. § 2310 provides, in relevant part:
Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity . . . .

[5] 42 Pa.C.S.A. § 8521 provides, in relevant part:
Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise . . . Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

strictly construed").[6]

As to plaintiffs' breach of contract claims against DPW, one additional statute is relevant to the issue of waiver. Under 62 Pa.C.S.A. § 1724, Pennsylvania has waived sovereign immunity over certain breach of contract claims against Pennsylvania agencies. However, jurisdiction over these claims is vested exclusively in the Pennsylvania Board of Claims, and not this Court. 62 Pa.C.S.A. § 1724; see also Seeney v. Kavistsky, 866 F. Supp. 206, 210 (E.D. Pa. 1994) (dismissing breach of contract claim against the Commonwealth of Pennsylvania for lack of jurisdiction).

Thus, all of plaintiffs' claims against defendant DPW are barred under the Eleventh Amendment.

### C. Plaintiffs' § 1983 Claims Are Also Barred Under Will v. Michigan Department of State Police

In Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court held that states and state agencies are not "persons" under 42 U.S.C. § 1983 and therefore may not be sued in federal or state court under that statute. See Howlett v. Rose, 496 U.S. 356, 365 (1990) ("Will establishes that the State and arms of the State . . . are not subject to suit under § 1983 . . ."). This holding applies to defendant DPW, a Pennsylvania agency. See Nelson, 244 F. Supp. 2d at 390 (holding that § 1983 action against DPW was barred under Will). Thus, plaintiffs' § 1983 claims against DPW are barred for this additional reason.

---

[6] Pursuant to 42 Pa.C.S.A. § 8522, Pennsylvania has waived sovereign immunity in the following limited circumstances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines. See 42 Pa.C.S.A. § 8522(b).

**D.       Dismissal, Not "Remand," Is the Appropriate Remedy**

In their Response to DPW's Motion to Dismiss, plaintiffs argue that the Court should "remand" this case to state court. Specifically, plaintiffs argue as follows:

> [T]he Eleventh Amendment may operate to prevent litigation of this matter in federal court. As such, Plaintiffs do not contest a remand to the Philadelphia Court of Common Pleas.
>
> Furthermore, a determination of whether Plaintiffs' claims are barred is premature as Plaintiffs have also presented claims against "John Does Nos. 1-5 of the Department of Public Welfare of the Commonwealth of Pennsylvania" in connection with DPW's investigation of this matter. Plaintiffs will only be able to obtain the details about DPW's investigation, in particular the individuals involved in the investigation, through discovery.

Pls.' Resp. at 5. The Court rejects plaintiffs' arguments and proposed remedy, for two reasons.

First, as a matter of law this Court cannot "remand" this case because it was not removed from state court. As the Third Circuit has explained, "[i]f a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed. If it was removed from state court, it must be remanded." In re Orthopedic "Bone Screw" Prod. Liab. Litig., 132 F.3d 152, 155 (3d Cir. 1997); see also Balazik v. County of Dauphin, 44 F.3d 209, 217 n.10 (3d Cir. 1995) (reiterating "the unsurprising proposition that only removed cases may be remanded").

Second, plaintiffs' argument that they require discovery from DPW to identify unnamed "John Does" in no way permits "remand" of this case to state court. Plaintiffs' claims against DPW are barred by the Eleventh Amendment in both federal and state court. See Alden, 527 U.S. at 754. Accordingly, the appropriate remedy is to dismiss the action against DPW under Rule 12(b)(1). Plaintiffs' need for discovery does not alter this rule. Moreover, the Court notes that plaintiff may obtain discovery from DPW even after it is dismissed as a party.

11

Thus, the Court dismisses plaintiffs' claims against DPW and does not "remand" the case to state court.

V.   **CONCLUSION**

For the foregoing reasons, the Court concludes that plaintiffs' claims against defendant DPW are barred under the Eleventh Amendment. Accordingly, DPW's Motion to Dismiss is granted for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and plaintiff's Complaint against defendant DPW is dismissed.

**BY THE COURT:**

<u>**/s/ Honorable Jan E. DuBois**</u>
    **JAN E. DUBOIS, J.**